1  Lincoln D. Bandlow, Esq. (CA #170449)
   Fox Rothschild LLP
2  Constellation Place
   10250 Constellation Blvd., Suite 900
3  Los Angeles, CA 90067
   Tel.: (310) 598-4150
4  Fax: (310) 556-9828
   lbandlow@foxrothschild.com

5  *Attorneys for Plaintiff*
   Strike 3 Holdings, LLC
6

7

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 STRIKE 3 HOLDINGS, LLC,                  Case Number: 3:18-cv-02715-BEN-BLM

13              Plaintiff,                  **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN
14 vs.                                      SUPPORT OF PLAINTIFF'S *EX-
                                            PARTE* APPLICATION FOR
15 JOHN DOE subscriber assigned IP          LEAVE TO SERVE A THIRD
   address 99.178.131.225,                  PARTY SUBPOENA PRIOR TO A
16                                          RULE 26(f) CONFERENCE**
                Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

                                    1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..........................................................................................1

II.   FACTS ........................................................................................................2

  A. Plaintiff Has a Serious Problem with BitTorrent Infringement ....................2

  B. Plaintiff Brings Its Litigation in Good Faith ...................................................3

III.   ARGUMENT ..............................................................................................4

  A. Legal Standard Governing Expedited Discovery Requests To Identify An
     Anonymous Defendant ...............................................................................4

  B. There Is Good Cause for this Court to Grant Plaintiff's Application for
     Leave to Serve Its Subpoena .........................................................................5

    1. Plaintiff Identifies Doe Defendant with Sufficient Specificity ................5

      a.  Plaintiff has Sufficiently Demonstrated that the Infringement
         Conducted Using the Relevant IP Address was Committed by an
         Actual Person ........................................................................................6

      b.  Plaintiff Traced Doe Defendant's IP Address to this Court's
         Geographic Jurisdiction Using Geolocation Technology ...................6

    2. Plaintiff Has Identified All Previous Steps Taken to Locate the
      Unknown Doe Defendant..........................................................................8

    3. Plaintiff's Complaint Could Withstand a Motion to Dismiss ..................8

    4. There is a Reasonable Likelihood that Plaintiff Can Identify the
      Defendant and Effectuate Service .......................................................11

  C. Protective Order ...........................................................................................12

IV.   CONCLUSION.........................................................................................12

i

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*,

   2012 WL 1648838 (S.D. Cal. May 4, 2012) ........................................................7

*A&M Records, Inc. v. Napster, Inc.*,

   239 F.3d 1004, 1013 (9th Cir. 2001) ..................................................................11

*AF Holdings LLC v. Doe*, No. CV 12-04447 RMW,

   2012 WL 12973140 (N.D. Cal. Nov. 6, 2012) ......................................................7

*Ashcroft v. Iqbal*,

   556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ...............10

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544, 570 (2007) ...................................................................................10

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,

   No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) ...................11

*Braun v. Doe*, No. CV 12-3690 YGR (JSC),

   2012 WL 3627640 (N.D. Cal. Aug. 21, 2012) .....................................................7

*Brayton Purcell LLP v. Recordon & Recordon*,

   606 F.3d 1124, 1126 (9th Cir. 2010) ...................................................................9

*Cell Film Holdings, LLC v. Doe*,

   No. CV 16-2584-BEN (BLM), 2016 WL 6523432 (S.D. Cal. Nov. 3, 2016)......7

*Cobbler Nevada, LLC v. Doe-68.8.213.203*, No. CV 15-2729-GPC (JMA),

   2015 WL 9026554 (S.D. Cal. Dec. 15, 2015) ......................................................9

*Columbia Ins. Co. v. Seescandy.com*,

   185 F.R.D. 573, 577 (N.D. Cal. 1999) ........................................................ 4, 5, 9

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,

   606 F.3d 612 (9th Cir. 2010) .............................................................................10

*Criminal Prods., Inc. v. Doe*, No. CV 16-02353-DMS (MDD),

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

2016 WL 6070355, at *3 (S.D. Cal. Oct. 17, 2016)............................................11

*Criminal Prods., Inc. v. Doe*, No. CV 16-2589 WQH (JLB), 2016 WL 6822186

(S.D. Cal. Nov. 18, 2016)............................................................................7

*Criminal Prods., Inc. v. Doe-72.192.163.220*, No. CV 16-2589 WQH (JLB), 2016

WL 6822186 (S.D. Cal. Nov. 18, 2016)............................................................4

*Distinct Media Ltd. v. Doe Defendants 1-50*, No. CV 15-03312 NC,

2015 WL 13389609 (N.D. Cal. Sept. 29, 2015)..................................................6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

499 U.S. 340, 361 (1991) ..........................................................................10

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,

747 F.3d 1060, 1067 (9th Cir. 2013)............................................................10

*G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. CV 14-02069 LB,

2014 WL 2759075 (N.D. Cal. June 17, 2014) ..................................................6

*Malibu Media, LLC v. Doe*, No. CV 16-1916-GPC (JMA),

2016 WL 6216183 (S.D. Cal. Oct. 25, 2016)................................... 4, 5, 7, 8

*Patrick Collins, Inc. v. John Doe*,

945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013)......................................................11

*Perfect 10, Inc. v. Giganews, Inc.*,

847 F.3d 657, 666 (9th Cir. 2017 .............................................................. 10, 11

*QOTD Film Inv. Ltd. v. Doe*, No. CV 16-00759-LAB (JLB),

2016 WL 1324424, at *1 (S.D. Cal. Apr. 5, 2016) ..............................................5

*Semitool, Inc. v. Tokyo Electron America, Inc.*,

208 F.R.D. 273, 274 (N.D. Cal. 2002) ..........................................................5

*Strike 3 Holdings, LLC v. Doe*, No. CV 17-2317-JAH (BLM),

2017 WL 6389848, at *1 (S.D. Cal. Dec. 14, 2017) ................................. 5, 7, 12

*Strike 3 Holdings, LLC v. Doe*, No. CV 3:17-02316-GPC (KSC),

2018 WL 324264 (S.D. Cal. Jan. 5, 2018) ........................................................9

iii

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

*United States v. Richardson*, No. CR 4:11-3116,

    2012 WL 10382 (D. Neb. Jan. 3, 2012) ...............................................8

*United States v. Tillotson*, No. CR 2:08-33,

    2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) ......................................8

**Statutes**

17 U.S.C. § 106(1) ...................................................................................11

17 U.S.C. § 410(c) ...................................................................................10

28 U.S.C. § 1331 ........................................................................................9

28 U.S.C. § 1338 ........................................................................................9

28 U.S.C. § 1400(a) ...................................................................................9

**Rules**

Fed. R. Civ. P. 26(d)(1) .........................................................................1, 4

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Fed. R. Civ. P. 26(d)(1), Plaintiff Strike 3 Holdings, LLC ("Strike 3") hereby respectfully submits this Memorandum of Points and Authorities in support of its *Ex-Parte* Application for leave to serve a third-party subpoena prior to a Rule 26(f) conference.

## I.    INTRODUCTION

Strike 3 is the owner of original, award-winning adult motion pictures featured on its subscription-based websites.[1]  Unfortunately, like many other producers of motion pictures, Strike 3's success is substantially harmed and threatened by users on the Internet illegally infringing its works on a very large scale.  Indeed, Strike 3's motion pictures are among the most infringed content in the world.  *See* Lansky Decl. at ¶ 25.[2]

To address this problem, Strike 3 hired an investigator, IPP International U.G., to monitor and detect the infringement of Strike 3's content.  IPP discovered that Defendant's IP address was illegally distributing numerous motion pictures owned and copyrighted by Strike 3.  Strike 3's independent forensic expert, Philip Pasquale reviewed the evidence captured by IPP and confirmed that Defendant's IP address was involved in an infringing transaction at the exact date and time reported by IPP.  *See generally* concurrently-filed Declaration of Philip Pasquale. Strike 3 only knows Defendant by his or her IP address.  This IP address is assigned to Defendant by his or her Internet Service Provider ("ISP"), which is the only party that has the information necessary to identify Defendant by correlating the IP address with John Doe's identity.  As a result, Strike 3 now seeks leave to serve limited, immediate discovery on Defendant's ISP, AT&T Inc. (AT&T U-

---

[1] *See generally* concurrently-filed Declaration of Greg Lansky ("Lansky Decl.").

[2] *See also* Dylan Love, *The Most-Pirated Man in Porn Is Getting Angry*, Inverse (May 24, 2017), https://www.inverse.com/article/31350-greg-lansky-tushy-blacked-vixen-interview.

1

verse) so that Strike 3 may learn Defendant's identity, investigate Defendant's role in the infringement, and if warranted by the investigation, effectuate service. Further impelling expediency, Defendant's ISP only maintains the internal logs of the requested information for a brief period of time. *See Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("[E]xpedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.").

Accordingly, Strike 3 hereby seeks leave of Court to serve a Rule 45 subpoena on Defendant's ISP. This subpoena will only demand the true name and address of Defendant. Strike 3 will only use this information to prosecute the claims made in its Complaint. Without this information, Plaintiff cannot serve Defendant nor pursue this lawsuit and protect its copyrights.

## II.   FACTS

### A.   BitTorrent Infringement has a Serious and Damaging Impact on Strike 3

Greg Lansky ("Mr. Lansky") is a member of General Media Systems, LLC, ("GMS"), the parent company that owns Strike 3. *See* Lansky Decl. at ¶ 1. Strike 3 owns the intellectual property to the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the "Brands"), including the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *Id.* at ¶ 3. Strike 3 is owned entirely by Mr. Lansky's company, GMS, and has existed since 2015. *Id.*

Mr. Lansky is the Chief Creative Officer of the Brands. *Id.* at ¶ 1. In 2006, Mr. Lansky moved to the United States from Paris to pursue his dream of creating art in an adult context. *Id.* at ¶ 4. He has always been passionate about photography and cinematography. *Id.*

2

1   It was a difficult start.  Mr. Lansky, who barely spoke speak English, had

2   trouble making connections and finding employment.  *Id.* at ¶ 5.  Eventually, after

3   tremendous hard work, Mr. Lansky was fortunate to be hired by some of the

4   biggest adult brands in the world.  *Id.* at ¶ 6.  Through these experiences, Mr.

5   Lansky was able to establish himself and become an expert in the field.  *Id.*

6   In 2013, Mr. Lansky decided to risk everything to create his own company

7   and studio.  *Id.* at ¶ 7.  After a few years, his brands turned into a multi-million

8   dollar a year business.  *Id.* at ¶ 10.  His philosophy is to pay artists and models an

9   amount above that being paid by other companies, focusing on delivering superior

10  quality films.  *Id.* at ¶¶ 12–13.  Moreover, Strike 3's motion pictures are known

11  for having the highest production budget of any in the adult industry.  *Id.* at ¶ 15.

12  Because of this, the websites for the Brands have a subscriber base that is

13  one of the highest of any adult sites in the world, with 20 million unique visitors

14  to its websites per month, and have a loyal following.  *Id.* at ¶ 10.  Strike 3 is also

15  currently the number one seller of adult DVDs in the United States.  *Id.* at ¶ 17.

16  Finally, Strike 3's content is licensed throughout the world, including by most

17  major cable networks.  *Id.* at ¶ 18.  This success has led to numerous awards being

18  bestowed upon Strike 3, such as "adult site of the year," "best marketing

19  campaign – company image," and "best cinematography."  *Id.* at ¶ 19.  Mr.

20  Lansky himself has also won "director of the year" three years in a row.  *Id.*

21  Unfortunately, piracy is a major threat and causes tremendous damage to

22  Strike 3.  As Mr. Lansky succinctly puts it, Strike 3 "can compete in the industry,

23  but we cannot compete when our content is stolen."  *Id.* at ¶ 22.  To continue to

24  provide value for members, exciting and inspiring projects for adult performers,

25  and to continue to create top paying jobs and growth in the adult community,

26  Strike 3 must protect its copyrights.  *Id.* at ¶ 29.

27

28

3

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

### B.    <u>Plaintiff Brings Its Litigation in Good Faith</u>

Strike 3 is mindful of the nature of the litigation and its goal is to not disclose publicly the choices people make regarding the content they wish to enjoy. Moreover, Strike 3 does not seek to force anyone to settle unwillingly, especially anyone that is innocent. *Id.* at ¶ 28. Therefore, Strike 3 only files strong cases against extreme infringers. *Id.* at ¶ 29. Indeed, each lawsuit is brought against infringers that not only engage in illegal downloading, but are also large scale unauthorized distributors of Strike 3's content. *Id.* All defendants within the Strike 3 litigation have distributed, at a minimum, at least 15% of Strike 3's entire copyrighted library. *Id.* Strike 3 does not seek settlements unless initiated by a defendant or a defendant's counsel. *Id.* at ¶ 30. Moreover, Strike 3 does not send demand letters nor make any attempt to contact a defendant prior to service of the Complaint. *Id.* Finally, although certainly Strike 3 does not believe anyone should be embarrassed about enjoying Strike 3's works (they just need to pay for that right, not steal it), Strike 3 respects the desire of defendants to keep private their choices regarding content they choose to enjoy. Accordingly, Strike 3 has a policy to: (1) enter into confidentiality agreements with defendants to facilitate resolution of case; and (2) stipulate to requests by defendants to the entry of orders in litigation to maintain the confidentiality of a defendant's identity. Thus, Strike 3 is careful to only proceed to litigation with strong cases, when it has a good faith basis for doing so, and to enforce its rights in a way that is mindful of a defendant's privacy interests. *Id.* at ¶ 31.

Strike 3 is a successful adult entertainment company that makes nearly all of its revenue from sales of subscriptions, DVDs, and licenses. *Id.* at ¶ 32. This litigation, or any litigation instituted by Strike 3, is not a business model. *Id.* Instead, Strike 3's goal is to deter piracy (and seek redress for its harmful consequences) and redirect the infringement back into legitimate sales. *Id.*

4

1  Proceeds that Strike 3 receives from settlements go back into making the company

2  whole, including investing in better pay for artists and performers, better quality

3  productions, and hiring and providing benefits for employees. *Id*.

4  **III.    ARGUMENT**

5          **A.    Legal Standard Governing Expedited Discovery Requests To**

6                  **Identify An Anonymous Defendant**

7          Cases such as this one are the paradigm for when leave to conduct pre-Rule

8  26(f) conference discovery should be allowed. "Generally, discovery is not

9  permitted without a court order before the parties have conferred pursuant to

10  Federal Rule of Civil Procedure 26(f)." *Malibu Media, LLC v. Doe*, No. CV 16-

11  1916-GPC (JMA), 2016 WL 6216183, at *1 (S.D. Cal. Oct. 25, 2016) (citing Fed.

12  R. Civ. P. 26(d)(1)). "[H]owever, . . . courts have made exceptions, permitting

13  limited discovery to ensue after filing of the complaint to permit the plaintiff to

14  learn the identifying facts necessary to permit service on the defendant." *Criminal*

15  *Prods., Inc. v. Doe-72.192.163.220*, No. CV 16-2589 WQH (JLB), 2016 WL

16  6822186, at *1 (S.D. Cal. Nov. 18, 2016) (quoting *Columbia Ins. Co. v.*

17  *Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999)).

18          "Courts in the Ninth Circuit apply the 'good cause' standard in deciding

19  whether to permit early discovery." *Strike 3 Holdings, LLC v. Doe*, No. CV 17-

20  2317-JAH (BLM), 2017 WL 6389848, at *1 (S.D. Cal. Dec. 14, 2017) (citing

21  *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 274 (N.D. Cal.

22  2002)). "Requests to conduct discovery prior to a Rule 26(f) conference are

23  granted upon a showing of good cause by the moving party, which may be found

24  'where the need for expedited discovery, in consideration of the administration of

25  justice, outweighs the prejudice to the responding party.'" *QOTD Film Inv. Ltd. v.*

26  *Doe*, No. CV 16-00759-LAB (JLB), 2016 WL 1324424, at *1 (S.D. Cal. Apr. 5,

27  2016) (quoting *Semitool*, 208 F.R.D., at 275–76).

28                                          5

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

District courts in the Ninth Circuit apply a three-factor test when considering motions for expedited discovery to identify certain defendants. First, the plaintiff should identify the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court. Second, the plaintiff must describe all previous steps taken to locate the elusive defendant to ensure that plaintiff has made a good faith effort to identify the defendant. Third, plaintiff should establish that its lawsuit could withstand a motion to dismiss.

*Strike 3 Holdings*, No. CV 17-2317-JAH (BLM), 2017 WL 6389848, at *2 (citing *Columbia Ins. Co.*, 185 F.R.D. at 578–80) (internal quotations and citations omitted). "[T]he plaintiff must show that some act giving rise to liability actually occurred and that the discovery is aimed at identifying the person who actually committed the act." *Malibu Media*, No. CV 16-1916-GPC (JMA), 2016 WL 6216183, at *1 (internal quotation marks and citation omitted).

**B.**     **There Is Good Cause for this Court to Grant Plaintiff's Application for Leave to Serve Its Subpoena**

      **1.**     ***Strike 3 Identifies Doe Defendant with Sufficient Specificity***

When evaluating an application for leave to take early discovery "the Court examines whether the plaintiff has identified the defendants with sufficient specificity, demonstrating that each defendant is a real person or entity who would be subject to the Court's jurisdiction." *Distinct Media Ltd. v. Doe Defendants 1-50*, No. CV 15-03312 NC, 2015 WL 13389609, at *2 (N.D. Cal. Sept. 29, 2015) (citation omitted). This factor implies two inquiries: whether the infringement can be traced back to an actual person and whether this Court has personal jurisdiction over that individual.

6

### a.  Strike 3 has Sufficiently Demonstrated that the Infringement Conducted Using the Relevant IP Address was Committed by an Actual Person

"A plaintiff may show that a defendant is a real person or entity by providing evidence of 'specific acts of misconduct that could only have been perpetrated by actual people, as opposed to a mechanical process.'" *Id.* (quoting *G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. CV 14-02069 LB, 2014 WL 2759075, at *2 (N.D. Cal. June 17, 2014)). Although the BitTorrent protocol contains some default and automatic functions, none of these operations can take place without human interaction. That is, but for the Doe Defendant directing his or her BitTorrent client to download the torrent file, the alleged infringement would not have occurred.

### b.  Strike 3 Traced Doe Defendant's IP Address to this Court's Geographic Jurisdiction Using Geolocation Technology

"[A] plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP address to a physical point of origin." *Malibu Media*, No. CV 16-1916-GPC (JMA), 2016 WL 6216183 at *2 (quoting *808 Holdings, LLC v. Collective of Dec. 29, 2011 Sharing Hash*, 2012 WL 1648838, at *4 (S.D. Cal. May 4, 2012)).  Here, Strike 3 used Maxmind, a geolocation technology, to trace Defendant's IP address to a geographic area within this Court's personal jurisdiction.  This establishes "a prima facie showing of personal jurisdiction over defendant."  *AF Holdings LLC v. Doe*, No. CV 12-04447 RMW, 2012 WL 12973140, at *2 (N.D. Cal. Nov. 6, 2012); *see also Braun v. Doe*, No. CV 12-3690 YGR (JSC), 2012 WL 3627640, at *2 (N.D. Cal. Aug. 21, 2012) (noting that "[p]ublicly available software provides

7

basic, or at least presumptive, geographic information about IP addresses"))
(citation omitted).

This Court has accepted Maxmind's findings for the purpose of allowing
expedited discovery.  *See e.g.*, *Strike 3 Holdings*, No. CV 17-2317-JAH (BLM),
2017 WL 6389848, at *2; *Cell Film Holdings, LLC v. Doe*, No. CV 16-2584-BEN
(BLM), 2016 WL 6523432, at *2 n.2 (S.D. Cal. Nov. 3, 2016), *Criminal Prods.,
Inc. v. Doe*, No. CV 16-2589 WQH (JLB), 2016 WL 6822186, at *3 (S.D. Cal.
Nov. 18, 2016) ("The Court concludes that based on the timing of the IP address
tracing efforts employed by Plaintiff's investigator, the documented success of the
Maxmind geolocation service, and Plaintiff's counsel's efforts to independently
verify the location information provided by Plaintiff's investigator, Plaintiff has
met its evidentiary burden [that jurisdiction is proper].").  Indeed, federal law
enforcement relies on Maxmind for its cyber investigations.  *See e.g., United
States v. Tillotson*, No. CR 2:08-33, 2008 WL 5140773, at *6 (E.D. Tenn. Dec. 2,
2008) (Department of Justice); *United States v. Richardson*, No. CR 4:11-3116,
2012 WL 10382 at *2 (D. Neb. Jan. 3, 2012), *report and recommendation
adopted*, No. CR 4:11-3116, 2012 WL 395509 (D. Neb. Feb. 7, 2012) (Federal
Bureau of Investigation); *see also* Complaint at ¶ 9.  Since Strike 3 has
demonstrated that the infringer is an actual person, and because Strike 3correlated
this IP address with a location within this Court's jurisdiction using proven and
reliable geolocation technology, this factor favors expedited discovery.

## 2.  *Strike 3 Has Identified All Previous Steps Taken to Locate the Unknown Doe Defendant*

"Next, Plaintiff must identify all previous steps taken to identify the Doe
Defendant in a good faith effort to locate and serve it."  *Malibu Media, LLC v.
Doe*, No. CV 16-1916-GPC (JMA), 2016 WL 6216183 at *2 (citing *Columbia
Ins. Co.*, 185 F.R.D. at 579).  Here, Strike 3 has diligently attempted to correlate

8

Defendant's IP address to Defendant by searching for Defendant's IP address on various web search tools, including basic search engines like http://www.google.com.  Strike 3 has further conducted its own diligent research on its ability to identify Defendant by other means by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).  Strike has also discussed the issue at length with computer investigators and cyber security consultants.  Strike 3 has been unable to identify any other way to go about obtaining the identities of its infringers and does not know how else it could possibly enforce its copyrights from illegal piracy over the Internet.  "This is the case because although publicly available data allowed Plaintiff to identify the specific ISP used by Defendant as well as the city associated with the IP address, it did not permit Plaintiff to ascertain the identity of the subscriber or actual defendant. Accordingly, Plaintiff appears to have investigated and obtained the data pertaining to the alleged infringement in a good faith effort to locate Defendant."  *Cobbler Nevada, LLC v. Doe-68.8.213.203*, No. CV 15-2729-GPC (JMA), 2015 WL 9026554, at *2 (S.D. Cal. Dec. 15, 2015).  Thus, Strike 3 has exhausted all other alternatives for identifying Defendant.

### 3.  Strike 3's Complaint Could Withstand a Motion to Dismiss

Finally, Strike 3's Complaint could and would withstand a motion to dismiss.  This factor acts as a gatekeeper designed to "prevent abuse of this extraordinary application of the discovery process and to ensure that plaintiff has standing to pursue an action against defendant."  *Columbia Ins. Co.*, 185 F.R.D. at 579–80 (citation omitted).

As this is an action for copyright infringement, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over copyright actions).  *See* Complaint at ¶ 7; *see also Strike 3*

9

1  *Holdings, LLC v. Doe*, No. CV 3:17-02316-GPC (KSC), 2018 WL 324264, at *3

2  (S.D. Cal. Jan. 5, 2018) (finding "the Complaint correctly alleges subject matter

3  jurisdiction pursuant to Title 28").  This Court also has personal jurisdiction over

4  Doe Defendant because the Defendant's infringement took place within the

5  geographic scope of this Court's jurisdiction, *supra* Section B.1.b., and Defendant

6  also likely resides within this District or at least has substantial contacts with this

7  District.  *See* Complaint ¶¶ 8–9. Venue is appropriate pursuant to 28 U.S.C.

8  § 1391(b) and (c) as well as 28 U.S.C. § 1400(a) (venue for copyright cases).  *See*

9  Complaint ¶ 10; *see also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

10 1124, 1126 (9th Cir. 2010) ("This circuit interprets [28 U.S.C. § 1400(a)] to allow

11 venue in any judicial district where, if treated as a separate state, the defendant

12 would be subject to personal jurisdiction").

13      Finally, "[t]o survive a motion to dismiss [for failure to state a claim upon

14 which relief can be granted], a complaint must contain sufficient factual matter,

15 accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

16 *v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

17 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Strike 3's

18 Complaint would survive such a motion.

19      To make a prima facie claim for copyright infringement, a plaintiff must

20 show (1) ownership of a valid copyright, and (2) copying of constituent elements

21 of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S.

22 340, 361 (1991). "In addition, direct infringement requires the plaintiff to show

23 causation (also referred to as 'volitional conduct') by the defendant."  *Perfect 10,*

24 *Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citing *Fox Broad. Co.,*

25 *Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2013)).  Strike 3's

26 Complaint accomplishes this, stating: (1) "Plaintiff is the owner of the Works,

27 which [are] an original work of authorship"; (2) "[d]efendant copied and

28                                                                 10

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (3) "[a]t no point in time did Plaintiff authorize, permit or consent to Defendant's distribution of its Works, expressly or otherwise." *See* Complaint at ¶¶ 35–37.

Strike 3 owns a valid copyright in the Works, which are registered with the United States Copyright Office or have complete applications pending. *See* Complaint at ¶¶ 31–33; *see also* 17 U.S.C. § 410(c); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010). Strike 3's prima facie allegations of infringement are attested to by Strike 3's investigator, IPP International U.G.'s employee, Tobias Fieser. *See* concurrently-filed Declaration of Tobias Fieser. Finally, each digital file has been verified to be a copy of one of Strike 3's copyrighted works. *See* concurrently-filed Declaration of Susan Stalzer.

Strike 3 has also made a plausible prima facie showing of "copying." "'The word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights' described in § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Strike 3's Complaint alleges that Doe Defendant not only downloaded Strike 3's works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to the BitTorrent swarm. *See id.* § 106(3); *see also* Complaint at ¶ 38. Additionally, by downloading the torrent files, Defendant triggered a cascade of technical operations, making Defendant the "proximate cause" of all of the violations of Plaintiff's copyrights. *Giganews, Inc.*, 847 F.3d at 666. "Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address." *Patrick Collins, Inc. v. John Doe*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) (discussing the sufficiency of the complaint under Rule 12(b)(6)).

11

Memorandum of Points and Authorities in Support of Plaintiff's *Ex-Parte* Application for Leave to Serve
a Third Party Subpoena Prior to a Rule 26(f) Conference
Case No. 3:18-cv-02715-BEN-BLM

As a result, Strike 3 has made a prima facie case against Doe Defendant and thus demonstrated good cause for leave to take early discovery.  *See Criminal Prods., Inc. v. Doe*, No. CV 16-02353-DMS (MDD), 2016 WL 6070355, at *3 (S.D. Cal. Oct. 17, 2016) (accepting a similar prima facie case as satisfying this factor).

### 4. There is a Reasonable Likelihood that Strike 3 Can Identify the Defendant and Effectuate Service

Strike 3's knows that AT&T U-verse is the owner of Defendant's IP address because Maxmind's geolocation service has identified AT&T U-verse as the owner.  Moreover, the American Registry for Internet Numbers ("ARIN") identifies AT&T U-verse as the owner of the IP address.[3]  *See* Decl. of Susan B. Stalzer; *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. CV 16-1972, 2018 WL 650316, at *2 (4th Cir. Feb. 1, 2018) (noting "only the ISP can match the IP address to the subscriber's identity").  ARIN is a nonprofit, member-based organization, responsible for the management and distribution of IP addresses across most of North America, including all of the United States.[4]

The subpoena seeks Doe Defendant's name and address, which are currently unknown to Plaintiff.  With Defendant's identity, Plaintiff will be able to amend its complaint to name Doe Defendant and with said name and address, will be able to serve a summons upon Defendant pursuant to Fed. R. Civ. P. 4(a) and (e) (requiring Plaintiff to name the Defendant and effectuate service on that individual).  Without the subpoenaed for information, Strike 3 cannot properly serve Doe Defendant because it does not know his or her identity.

---

[3] https://whois.arin.net/
[4] https://www.arin.net/about_us/overview.html

12

1

### C.      <u>Protective Order</u>

In BitTorrent cases involving adult content, Courts have found it appropriate to issue a protective order establishing procedural safeguards such as allowing a defendant to proceed anonymously.  *See e.g., Strike 3 Holdings*, No. CV 17-2317-JAH (BLM), 2017 WL 6389848 at *3–4. As set forth above, Strike 3 agrees and this comports with Strike 3's policy of respecting privacy in these matters.  Thus, Strike 3 respectfully encourages the Court to establish such procedures here, should the Court find it appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to Defendant's ISP.

Date: 12/06/2018                          FOX ROTHSCHILD LLP

Respectfully submitted,

By:
Lincoln Bandlow, Esq.
FOX ROTHSCHILD LLP

*Attorney for Plaintiff*
Strike 3 Holdings, LLC

13